1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **CENTRAL DISTRICT OF CALIFORNIA**

10                              **WESTERN DIVISION**

11

12   MARSHELL L. SCOTT,                    )   No.  ED CV 08-396-PLA
                                           )
13                   Plaintiff,            )
                                           )   **MEMORANDUM OPINION AND ORDER**
14          v.                             )
                                           )
15   MICHAEL J. ASTRUE,                    )
     COMMISSIONER OF SOCIAL                )
16   SECURITY ADMINISTRATION,              )
                                           )
17                   Defendant.            )
                                           )
18   _____)

19                                      **I.**

20                                **PROCEEDINGS**

21          Plaintiff filed this action on March 21, 2008, seeking review of the Commissioner's denial

22   of her applications for Supplemental Security Income payments and Disability Insurance Benefits.

23   The parties filed Consents to proceed before the undersigned Magistrate Judge on April 15, 2008,

24   and April 25, 2008.   Pursuant to the Court's Order, the parties filed a Joint Stipulation on

25   November 25, 2008, that addresses their positions concerning the disputed issues in the case.

26   The Court has taken the Joint Stipulation under submission without oral argument.

27   /

28   /

## II.

## BACKGROUND

Plaintiff was born on October 16, 1962.  [Administrative Record ("AR") at 100, 135, 169.] She has a high school education [AR at 45-46, 114, 121, 176], and has past relevant work experience as a machine operator, driver, quality control inspector, and warehouse worker.  [AR at 44, 109, 118, 127-32, 173-74.]

On January 4, 2005, plaintiff protectively filed her applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging that she has been disabled since March 9, 2004, due to complications from a stroke, poor mental state, depression, obesity, lower back problems, numbness on her right side, blurred vision in her left eye, difficulties with ambulation, and shortness of breath.  [AR at 106, 108, 118-19, 139, 162, 169-77, 488–90.]  After her applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 73-74, 85-99.]  A hearing was held on August 28, 2007, at which time plaintiff appeared with counsel and testified on her own behalf.  [AR at 41-72.] A vocational expert and a medical expert also testified.  [AR at 46-56, 68-71.]  On September 6, 2007, the ALJ determined that plaintiff was not disabled.  [AR at 16-28.]  Plaintiff requested review of the hearing decision.  [AR at 14-15.]  When the Appeals Council denied plaintiff's request for review on January 25, 2008, the ALJ's decision became the final decision of the Commissioner. [AR at 6-10.]  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as

1  adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

2  1257.  When determining whether substantial evidence exists to support the Commissioner's

3  decision, the Court examines the administrative record as a whole, considering adverse as well

4  as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

5  Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court

6  must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala,

7  53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

8

9                                          **IV.**

10                        **THE EVALUATION OF DISABILITY**

11        Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

12  to engage in any substantial gainful activity owing to a physical or mental impairment that is

13  expected to result in death or which has lasted or is expected to last for a continuous period of at

14  least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

15

16  **A.    THE FIVE-STEP EVALUATION PROCESS**

17        The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

18  whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

19  828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must

20  determine whether the claimant is currently engaged in substantial gainful activity; if so, the

21  claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in

22  substantial gainful activity, the second step requires the Commissioner to determine whether the

23  claimant has a "severe" impairment or combination of impairments significantly limiting her ability

24  to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

25  If the claimant has a "severe" impairment or combination of impairments, the third step requires

26  the Commissioner to determine whether the impairment or combination of impairments meets or

27  equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,

28  Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.

                                          3

1   If the claimant's impairment or combination of impairments does not meet or equal an impairment

2   in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

3   sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled

4   and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to

5   perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a

6   prima facie case of disability is established.  The Commissioner then bears the burden of

7   establishing that the claimant is not disabled, because she can perform other substantial gainful

8   work available in the national economy.  The determination of this issue comprises the fifth and

9   final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828

10  n.5; Drouin, 966 F.2d at 1257.

11

12  **B.       THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

13          In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial

14  gainful activity since the alleged onset date of the disability.[1]  [AR at 21.]  At step two, the ALJ

15  concluded that plaintiff has the following "severe" impairments: "morbid obesity with dependent

16  edema, left-sided cerebellar stroke in March 2004 with good recovery and hypertension (treated)

17  (citations omitted)." [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet

18  or equal any of the impairments in the Listing.  [AR at 22.]  The ALJ further found that plaintiff

19  retained the residual functional capacity ("RFC")[2] to perform light work[3] with the following

20  limitations: "she can sit for 60 minutes at a time and then stand and stretch for 1 to 2 minutes and

21  can carry on this way for 6 hours out of an 8-hour day[;] [s]he can be on her feet for 15 to 20

22

23      [1]    The ALJ also determined that plaintiff "meets the insured status requirements of the
24  Social Security Act through September 30, 2007."  [AR at 21.]

25      [2]    RFC is what a claimant can still do despite existing exertional and nonexertional
    limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

26
        [3]    Light work is defined as work involving "lifting no more than 20 pounds at a time with
27  frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of
    walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg
28  controls."  20 C.F.R. §§ 404.1567(b) and 416.967(b).

1  minutes at a time and can carry on this way for 2 hours in an 8-hour period, using a cane as

2  needed[;] [s]he can lift and/or carry 10 pounds frequently and 20 pounds occasionally"; she can

3  stoop and bend on an occasional basis; she can climb stairs, but cannot climb ladders, work at

4  heights or balance; and she requires an air-conditioned work environment and would miss work

5  one or two times a month.  [AR at 22-23.]  At step four, the ALJ concluded that plaintiff was not

6  capable of performing her past relevant work.  [AR at 26.]  At step five, the ALJ found, based on

7  the vocational expert's testimony, that "there are jobs that exist in significant numbers in the

8  national economy that [plaintiff] can perform."  [AR at 27.]  Accordingly, the ALJ determined that

9  plaintiff is not disabled.  [AR at 27-28.]

10

11                                              **V.**

12                                  **THE ALJ'S DECISION**

13       Plaintiff contends that the ALJ: (1) erred in rejecting the opinion of independent examining

14  internist Dr. Joseph Nassir; and (2) failed to sufficiently explain the discrepancy between the

15  published employment data and the vocational expert's testimony.  Joint Stipulation ("Joint Stip.")

16  at 3.  As set forth below, the Court respectfully disagrees with plaintiff, and affirms the ALJ's

17  decision.

18

19  **A.       EXAMINING PHYSICIAN'S OPINION**

20       Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for rejecting

21  the opinion of Dr. Nassir.  Joint Stip. at 11-12.  Specifically, plaintiff asserts that the ALJ improperly

22  discounted "Dr. Nassir's finding that [plaintiff] could not sustain the tasks attendant to an eight-hour

23  workday."  Joint Stip. at 11.

24       In evaluating medical opinions, the case law and regulations distinguish among the opinions

25  of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who

26  examine but do not treat the claimant (examining physicians); and (3) those who neither examine

27  nor treat the claimant (non-examining physicians).  See 20 C.F.R. §§ 404.1502, 416.927; see also

28  Lester, 81 F.3d at 830.  As a general rule, the opinions of treating physicians are given greater

1  weight than those of other physicians, because treating physicians are employed to cure and

2  therefore have a greater opportunity to know and observe the claimant.  See Smolen v. Chater, 80

3  F.3d 1273, 1285 (9th Cir. 1996); see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)

4  (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).  Although the treating physician's

5  opinion is entitled to great deference, it is not necessarily conclusive as to the question of disability.

6  See Magallanes, 881 F.2d at 751 (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989)).

7       "'The administrative law judge is not bound by the uncontroverted opinions of the claimant's

8  physicians on the ultimate issue of disability, but he cannot reject them without presenting clear

9  and convincing reasons for doing so.'"  Matthews v. Shalala, 10 F.3d at 678, 680 (9th Cir. 1993)

10  (quoting Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir. 1984)); see

11  also Lester, 81 F.3d at 830.  Where the treating physician's opinion on disability is controverted,

12  it can be rejected only with specific and legitimate reasons supported by substantial evidence in

13  the record.  See Lester, 81 F.3d at 830; see also 20 C.F.R. §§ 404.1527(d), 416.927(d) (requiring

14  that Social Security Administration "always give good reasons in [the] notice of determination or

15  decision for the weight [given to the] treating source's opinion"); Social Security Ruling[4] 96-2p ("the

16  notice of the determination or decision must contain specific reasons for the weight given to the

17  treating source's medical opinion, supported by the evidence in the case record, and must be

18  sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to

19  the treating source's medical opinion and the reasons for that weight.").  "The opinion of an

20  examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining

21  physician."  Lester, 81 F.3d at 830.  As is the case with the opinion of a treating physician, the ALJ

22  must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an

23  examining physician, and specific and legitimate reasons supported by substantial evidence in the

24  record to reject the contradicted opinion of an examining physician.  See id. at 830-31.

25

26       [4]  Social Security Rulings ("SSR") do not have the force of law.  Nevertheless, they

27  "constitute Social Security Administration interpretations of the statute it administers and of its
own regulations," and are given deference "unless they are plainly erroneous or inconsistent with

28  the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

1    Dr. Nassir examined plaintiff on November 29, 2006. [AR at 347-49.] He found that plaintiff

2  had, among other things, decreased range of motion of the back, hip and knees, "more prominent

3  on the knee with possibly degenerative joint disease secondary to [plaintiff's] weight," mild

4  weakness on the right side, and parethesia with decreased sensitivity to soft pinpricking. [AR at

5  348.] Dr. Nassir noted that plaintiff's "multiple medical problems[5] not only prevent her from

6  performing her required work activities, but also prevent her from performing her required daily

7  activities." [AR at 348.] Dr. Nassir determined that plaintiff "is unable to withstand [a] substantial

8  amount of sitting or standing and . . . is unable to perform work activities on a sustained, regular

9  basis." [AR at 349.] Thus, he concluded that plaintiff is disabled. [Id.] Concurrent with his

10  examination of plaintiff, Dr. Nassir completed a "Multiple Impairment Questionnaire"

11  ("Questionnaire") concerning plaintiff's impairments. [AR at 350-57.] Dr. Nassir opined that

12  plaintiff can sit, stand and/or walk for one hour in an eight-hour day, but not on a continuous basis,

13  and that plaintiff can lift and/or carry 5-10 pounds on an occasional basis and 0-5 pounds on a

14  frequent basis. [AR at 352-53.] Dr. Nassir further found that plaintiff is moderately limited in the

15  upper extremities [right greater than left] in her ability to grasp, turn and twist objects; moderately

16  limited in the right upper extremity and minimally limited in the left upper extremity in using her

17  fingers and/or hands for fine manipulation; and moderately limited in the right upper extremity and

18  minimally limited in the left upper extremity in using her arms for reaching (including overhead).

19  [AR at 353-54.] Dr. Nassir noted that plaintiff is capable of low work stress. [AR at 355.] He

20  estimated that plaintiff is likely to be absent from work more than three times a month as a result

21  of her impairments or treatment. [AR at 356.] Dr. Nassir found that plaintiff's psychological

22  limitations, limited vision, and her inability to push, pull, kneel, bend, and stoop would affect her

23  ability to work at a regular job on a sustained basis. [AR at 356.]

24

25    [5]  Dr. Nassir noted that plaintiff suffered from multiple medical problems related to her
26  previous stroke, including left eye droop, poor equilibrium or balance, left hand index finger
    reattachment, recurrent falls, dysarthria, dysphagia, right-sided body paresthesia, narcolepsy, poor
27  memory, back pain with lumbar radiculopathy, morbid obesity, dyspnea, depression, anxiety,
    insomnia, headaches, decreased hearing, right knee weakness, hypertension, and hyperlipidemia.
28  [AR at 348.]

1    In the decision, the ALJ rejected Dr. Nassir's opinion contained in the Questionnaire

2  because his opinion was rendered after only one evaluation. [AR at 25.]  Further, the ALJ did not

3  give "great weight" to the opinion of Dr. Nassir because it "is not from a treating source and is

4  inconsistent with other substantial evidence." [Id.]  Instead, the ALJ gave "great weight" to the

5  opinion of nonexamining medical expert Dr. Samuel Landau. [AR at 26.]  As discussed below, the

6  ALJ properly considered the opinion of Dr. Nassir.[6]

7    The ALJ's conclusion that Dr. Nassir's opinion is not entitled to "great weight" because it "is

8  not from a treating source and is inconsistent with other substantial evidence in the record" is

9  supported by the record. [AR at 25.]  While the fact that Dr. Nassir is not a treating source is not

10  determinative here,[7] the inconsistency of his opinion with other substantial evidence in the record was

11  properly considered by the ALJ.  It is solely within the province of the ALJ to make credibility findings

12  and resolve the conflicts in the medical evidence.  See Andrews, 53 F.3d at 1041 (the ALJ is

13  responsible for resolving conflicts in the evidence); see also Sample v. Schweiker, 694 F.2d 639, 642

14  (9th Cir. 1982) (where medical reports are inconclusive, "'questions of credibility and resolution of

15  conflicts in the testimony are functions solely of the Secretary'") (quoting Waters v. Gardner, 452 F.2d

16  855, 858 n.7 (9th Cir. 1971)); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) ("[w]hen there

17  is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict.")

18  (citation omitted); Magallanes, 881 F.2d at 753 ("[t]he analysis and opinion of an expert selected by

19

20    [6]   Given that a consultative examination, by its very nature, is based on a one-time
examination of plaintiff, the ALJ's rejection of Dr. Nassir's opinion because it was given after only
21  one evaluation is insufficient.  See 20 C.F.R. §§ 404.1502, 416.902 ("nontreating source means
a physician, psychologist, or other acceptable medical source who had examined [the claimant]
22  but does not have, or did not have, an ongoing treatment relationship with [the claimant]"); see,
e.g., Daniel v. Astrue, 2008 WL 3833761, *5 (D. Colo. Aug. 13, 2008) (discounting a consultative
23  examiner's opinion because it is based on a one-time examination is illogical since such is the
inherent nature of a consultative examination); Williams v. Barnhart, 2007 WL 486392, *8 (D. Kan.
24  Jan. 25, 2007) ("[i]f a single visit were sufficient to reject a medical opinion, there would be little
justification for consultative medical examinations, medical consultants at the administrative review
25  level, or medical experts at the hearing level").  Nevertheless, as discussed herein, the ALJ
26  provided other legally sufficient rationale for discounting the opinion of Dr. Nassir.

27    [7]   An ALJ is required to evaluate every medical opinion regardless of its source.  See 20
28  C.F.R. §§ 404.1527(d), 416.927(d).

1  the ALJ may be helpful to the ALJ's adjudication, and [the Court] should not impose 'burdensome

2  procedural requirements that facilitate . . . second-guessing [the ALJ's resolution of conflicting

3  medical testimony].'") (citing Allen v. Heckler, 749 F.2d 577, 580 (9th Cir. 1984)).  Here, in discounting

4  the opinion of Dr. Nassir, the ALJ considered the opinion of consultative examiner Dr. Sarah L. Maze,

5  the opinions of State Agency nonexamining physicians Dr. David A. Haaland, Dr. George G.

6  Spellman and Dr. Stuart B. Broasky, and the testimony of Dr. Landau.  [AR at 25-26, 46-55, 250-57,

7  301-04, 307-16.]  The ALJ specifically found that Dr. Nassir's opinion that plaintiff "is disabled and

8  unable to sustain an 8-hour workday" was inconsistent with the opinions of those physicians, all of

9  whom concluded that plaintiff "could perform at the very least light work."[8]  [AR at 25.]

10  　　　Dr. Maze performed a neurological evaluation of plaintiff on March 30, 2005, in which she

11  conducted physical and neurological examinations.  [AR at 301-04.]  Dr. Maze found that plaintiff

12  had intact facial sensation, normal function in the sternocleidomastoid and trapezius muscles,

13  decreased motor strength in the right lower extremities, intact sensation in the upper and lower

14  extremities, and normal coordination.  [AR at 302-04.]  She noted that plaintiff uses a cane, but

15  found that it is not required for ambulation.  [AR at 304.]  Dr. Maze also noted that plaintiff has a

16  history of stroke and cocaine use.  [Id.]  Dr. Maze further noted that plaintiff "is actually functioning

17  better at this time than she was when this examiner previously saw her on August 4, 2004, a few

18  months after her stroke."  [AR at 304.]  Dr. Maze found that plaintiff's only functional limitations are

19  problems with modulation of her speech and reflex asymmetry.  [AR at 304.]  She concluded that

20  plaintiff is able to: lift 100 pounds occasionally and 50 pounds frequently; stand, sit, and walk for 6

21  hours in an 8-hour workday; and perform fine motor activities with her arms and legs.  [AR at 304.]

22

23

24

25  　　[8]　It is noted that the examining psychologist and State Agency nonexamining psychiatrists

26  found that plaintiff: (1) did not have a severe mental impairment; (2) is able to perform simple, repetitive, and more complex skills; and (3) can sustain regular work activity for eight hours a day

27  with adequate concentration.  [AR at 278, 280, 290, 295, 330.]  In fact, one State Agency nonexamining psychiatrist found that plaintiff did not have a medically determinable psychiatric

28  impairment.  [AR at 331, 345.]

1    Dr. Haaland, Dr. Spellman and Dr. Broasky concluded that plaintiff can: (1) lift and/or carry

2  50 pounds on an occasional basis and 25 pounds on a frequent basis; (2) stand and/or walk (with

3  normal breaks) for about 6 hours in an 8-hour workday; (3) sit (with normal breaks) for about 6 hours

4  in an 8-hour workday; (4) push and/or pull with no limitations (other than lift and/or carry limitations);

5  (5) climb stairs and ramps on an occasional basis, but can never climb ladders, ropes, or scaffolds;

6  and (6) balance, stoop, kneel, crouch, and crawl on an occasional basis.  [AR at 251-52, 307-16.]

7  Dr. Haaland noted that plaintiff's medically determinable impairments are not of disabling severity.

8  [AR at 255.]  He further noted that plaintiff has slight right-sided weakness, but has a normal gait,

9  hip flexion, straight leg raising, and neurological examination.  [AR at 255.]

10    Dr. Landau testified at the hearing on August 28, 2007, that based on his consideration of

11  all of the pertinent evidence, plaintiff has morbid obesity with signs of edema, a history of a left-sided

12  cerebellar stroke, treated hypertension, and psychiatric diagnoses.  [AR at 47.]  Dr. Landau found

13  that plaintiff can sit for six hours in an eight-hour day (with normal breaks), stand and/or walk with

14  the use of a cane,[9] lift and/or carry 10 pounds on an frequent basis and 20 pounds on an occasional

15  basis, stoop and bend on an occasional basis, and climb stairs; plaintiff cannot climb ladders, work

16  at heights, or balance.  [AR at 47-50.]  Dr. Landau testified that Dr. Nassir's disability finding is not

17  corroborated by the degree of plaintiff's impairment.  [AR at 52.]  While noting the January 9, 2002,

18  CT scan of the lumbar spine showing mild degenerative changes, Dr. Landau further testified that

19  there is no objective evidence in the record for Dr. Nassir's finding of possible degenerative joint

20  disease of the knee.  [AR at 52-53, 348, 482.]  Specifically, Dr. Landau noted that there are no

21  images, deformities, or atrophy, and no objective findings, such as x-rays, that support regress

22  pathology.  [AR at 53.]

23    Contrary to the findings of Dr. Nassir, Dr. Maze did not find that plaintiff had possible

24  degenerative joint disease or an inability to withstand a substantial amount of sitting, or conclude

25

26    [9]    Although Dr. Landau's findings as to the amount of time that plaintiff can stand and/or

27  walk are not entirely clear from the hearing transcript, the ALJ in the decision indicated that Dr.
Landau found plaintiff capable of standing and/or walking "for 2 hours, using a cane as needed."

28  [AR at 26.]

1  that plaintiff was disabled.  See Magallanes, 881 F.2d at 751 (an examining physician's opinion

2  based on independent clinical findings can constitute substantial evidence).  Neither did the

3  nonexamining physicians conclude that plaintiff was disabled.  See id. at 752 (the opinion of a

4  nonexamining, nontreating physician need not be discounted when it "is not contradicted by *all other*

5  *evidence in the record*") (emphasis in original).  Rather, Dr. Maze found that plaintiff's only functional

6  limitations were problems with modulation of her speech and reflex asymmetry, and both Dr. Maze

7  and the nonexamining physicians concluded that plaintiff was at least able to perform work at the

8  light level of exertion.  [AR at 304, 307-16.]  After a thorough review of the records, the ALJ noted

9  that the residual functional capacity assessment for "a narrowed range of light work takes account

10  of the mild objective findings, the various medical opinions and claimant's testimony."  [AR at 26.]

11  He concluded that the RFC assessed in the decision "is more restrictive than the recommendations

12  of the consultative examiners and the State Agency review physicians, and accords [plaintiff] every

13  reasonable benefit of the doubt."  [Id.]  Given that the opinions of the examining and nonexamining

14  physicians regarding plaintiff's functional limitations were contrary to the opinion of Dr. Nassir, it was

15  solely within the province of the ALJ to resolve the conflicts in the medical opinions.  See Matney,

16  981 F.2d at 1019 ("[t]he trier of fact and not the reviewing court must resolve conflicts in the

17  evidence, and if the evidence can support either outcome, the court may not substitute its judgment

18  for that of the ALJ.") (citation omitted); see also Allen, 749 F.2d at 579 (if the evidence supports

19  more than one rational interpretation, the reviewing court must uphold the ALJ's decision as it is in

20  no position to second-guess the ALJ's choice among conflicting opinions).

21      Moreover, the ALJ's disregard of Dr. Nassir's opinion in favor of the opinion of nonexamining

22  medical expert Dr. Landau is legally sufficient.  In evaluating medical opinions,[10] the ALJ considers,

23  among other things, the supportability of the opinion in the evidence, the consistency of the opinion

24  with the record, including other medical opinions, and other factors such as the degree of

25

26      [10]   "Medical opinions are statements from physicians and psychologists or other acceptable
27  medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s)
   including [claimant's] symptoms, diagnosis and prognosis."   20 C.F.R. §§ 404.1527(a)(2),
28  416.927(a)(2).

1   understanding the physician has of the Social Security Administration's "disability programs and

2   their evidentiary requirements" and the degree of the physician's familiarity with other information

3   in the case record.  See 20 C.F.R. §§ 404.1527(d)(3)-(6), (f)(2)(ii), 416.927(d)(3)-(6), (f)(2)(ii);

4   see, e.g., Wimberly v. Astrue, 2008 WL 4381617, *5 (C.D. Cal. Sept. 25, 2008) ("[w]hen the ALJ

5   considers the findings of a State Agency medical consultant, the ALJ evaluates the findings using

6   factors such as medical specialty and expertise in social security rules, supporting evidence in the

7   case record, supporting explanations provided by the physician, and any other factors relevant to

8   the weighing of the opinions.") (citation omitted).  State Agency physicians are considered "highly

9   qualified physicians who are also experts in Social Security disability evaluation."  See 20 C.F.R.

10  §§ 404.1527(f)(2)(i), 416.927(f)(2)(i); see also SSR 96-6p.  "In appropriate circumstances, opinions

11  from State agency medical and psychological consultants and other program physicians and

12  psychologists may be entitled to greater weight than the opinions of treating or examining

13  sources."  SSR 96-6p.

14          Here, the ALJ gave "great weight" to the opinion of Dr. Landau in discounting the opinion

15  of Dr. Nassir.[11]   The ALJ noted that Dr. Landau's testimony is based on objective medical

16  evidence, is consistent with the medical record, and "takes account of the various

17  recommendations" in the record.  [AR at 26.]  Indeed, Dr. Landau's testimony was based on a

18  review of the record, including the treatment records and the opinions of the examining and

19  nonexamining sources.  [AR at 46-50.]  See SSR 96-6p (the opinion of a State Agency physician

20  may be entitled to greater weight than the opinion of a treating source if the State Agency

21  physician's opinion "is based on a review of a complete case record that includes a medical report

22  from a specialist in the [claimant's] particular impairment which provides more detailed and

23  comprehensive information than what was available to the [claimant's] treating source"); see also

24

25          [11]   In assigning "great weight" to the opinion of Dr. Landau, the ALJ in essence rejected
26  the opinion of Dr. Nassir based on the factors relevant to the evaluation of medical opinions.  See
    Magallanes, 881 F.2d at 755 ("[m]agic words" from the ALJ specifically rejecting a physician's
27  opinion are not required, when inferences "are there to be drawn" from the ALJ's decision).  Thus,
    the ALJ needed to provide specific and legitimate reasons for rejecting the opinion of Dr. Nassir.
28  As discussed herein, he did so.

1  20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3) ("the weight afforded to the opinions of nonexamining

2  physicians depends on "the degree to which they provide supporting explanations for their

3  opinions").  At the hearing on August 28, 2007, Dr. Landau concluded, based on his review of the

4  record and the objective medical findings, that Dr. Nassir's opinion that plaintiff is disabled is not

5  supported by the evidence, i.e., there is no objective evidence that plaintiff suffered from an

6  impairment of disabling severity.[12]  [AR at 52-53.]  Although Dr. Landau acknowledged on cross-

7  examination that Dr. Nassir's finding of possible degenerative joint disease is a "perfectly

8  reasonable diagnosis" in light of plaintiff's obesity, he testified that there is no objective evidence

9  to support such a finding.  [AR at 53.]  See Andrews, 53 F.3d at 1042 ("[b]ecause [the nonexamining

10  psychologist] was subject to cross-examination, the ALJ could legitimately credit her testimony.")

11  (citation omitted); see also Torres v. Secretary of Health and Human Services, 870 F.2d 742, 744

12  (1st Cir. 1989) (greater weight may be given to opinion of nonexamining expert who testifies at

13  hearing subject to cross-examination); Downing v. Barnhart, 167 Fed.Appx. 652, 653 (9th Cir. 2006)

14  (ALJ may reject a medical opinion if it is conclusory and inadequately supported by clinical findings)

15

16  [12]   Although a Riverside County Regional Medical Center progress note dated September
14, 2004, prepared by a medical student under the supervision of Dr. W. Hardt, references an
17  extension of plaintiff's disability period [AR at 263], the treatment records as a whole are
consistent with the testimony of Dr. Landau, as well as the opinions of the examining and
18  nonexamining physicians.  [AR at 208-15, 223, 228-33, 242-44, 248-49, 263-64, 266-67, 270-71,
298-99, 319-20, 358-61.]  See Andrews, 53 F.3d at 1041 (a treating physician's opinion is not
19  conclusive as to either functional limitations or the ultimate issue of disability).  Further, defendant
in the Joint Stipulation notes that the questionnaire completed by plaintiff's treating internist, Dr.
20  Ibrahim Sumarli of the Riverside Neighborhood Health Center [AR at 497-504], "was submitted
to the Appeals Council after the ALJ's decision."  See Joint Stip. at 10, n.2. Defendant contends
21  that the Appeals Council properly reviewed Dr. Sumarli's opinion and provided "specific and
legitimate reasons for determining that it did not offer a basis for changing the ALJ's decision."
22  Id.  In the Joint Stipulation, plaintiff does not specifically dispute the Appeals Council's finding that
the limitations assessed by Dr. Sumarli are not entitled to significant weight based on lack of
23  clinical evidence and inconsistency with the clinical notes.  [AR at 7.]  Nor does plaintiff specifically
argue that, in discounting the opinion of Dr. Nassir, the ALJ and/or the Appeals Council improperly
24  considered the treatment records from the Riverside facilities.  See 20 C.F.R. §§ 404.1527,
416.927 (the weight given to a treating physician's opinion depends on whether sufficient data
25  supports the opinion and whether the opinion comports with other evidence in the record); see
also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (inadequate clinical findings provide
26  specific and legitimate basis to reject treating physician's opinion).  Accordingly, the Court herein
27  will not further address the opinions of plaintiff's treating physicians.
28

13

1  (citation omitted); Matney, 981 F.2d at 1019 (ALJ may discount the conclusory opinion of an

2  examining or treating physician if the opinion is unsupported by clinical findings).  As discussed

3  herein, Dr. Landau's testimony is supported by substantial evidence in the record.  See 20 C.F.R.

4  §§ 404.1527(d)(5), 416.927(d)(5) (the more consistent an opinion is with the record as a whole,

5  the more weight it will be given); see, e.g., Knight v. Chater, 55 F.3d 309, 314 (7th Cir. 1995)

6  ("[m]edical evidence may be discounted if it is internally inconsistent or inconsistent with other

7  evidence.") (citation omitted).  Dr. Nassir's disability finding not only conflicted with the opinion of

8  Dr. Landau, but it also conflicted with the opinion of an examining physician and three other

9  nonexamining physicians.  See discussion, supra.  Thus, the ALJ did not err in affording "great

10 weight" to the opinion of Dr. Landau.  [AR at 26.]

11         Furthermore, the ALJ's reliance on Dr. Landau's opinion based on its consistency with other

12 evidence in the record was proper.  The opinion of a nonexamining physician may serve as

13 substantial evidence when it is consistent with other independent evidence in the record.  See

14 Lester, 81 F.3d at 830-31; see also Andrews, 53 F.3d at 1041 ("reports of the nonexamining advisor

15 need not be discounted and may serve as substantial evidence when they are supported by other

16 evidence in the record and are consistent with it"); Magallanes, 881 F.2d at 751-55 ("the ALJ did not

17 rely on [the nonexamining physician's] testimony *alone* to reject the opinions of [the claimant's]

18 treating physicians . . . .") (emphasis in original); but see Pitzer v. Sullivan, 908 F.2d 502, 506 n.4

19 (9th Cir. 1990) (the opinion of a nonexamining physician cannot, by itself, constitute substantial

20 evidence that justifies the rejection of a treating physician).  Dr. Landau's testimony, that there is no

21 objective evidence to support Dr. Nassir's disability determination, is consistent with the opinions

22 of the examining and other nonexamining physicians.  Given that Dr. Landau's opinion is supported

23 by other evidence in the record, his opinion constitutes substantial evidence.

24         The ALJ summarized the facts and conflicting evidence in a detailed and thorough manner,

25 stating his interpretation and making findings.  Thus, his conclusion is entitled to deference.  The

26 ALJ provided legally sufficient reasons, based on substantial evidence in the record, for

27 discounting the opinion of Dr. Nassir.  See Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)

28 (specific and legitimate reasons can be set forth by a "detailed and thorough summary of the facts

1  and conflicting clinical evidence, stating [the ALJ's] interpretation thereof, and making findings")

2  (citing Magallanes, 881 F.2d at 751).  Accordingly, remand is not warranted on this issue.

3

4  **B.     ABILITY TO PERFORM OTHER WORK**

5  Plaintiff contends that the ALJ erred in relying on the testimony of the vocational expert as

6  it was "patently insufficient."  Joint Stip. at 15-17.  Plaintiff argues that, according to the Dictionary

7  of Occupational Titles ("DOT"), the jobs cited by the vocational expert are "substantially

8  inconsistent" with the residual functional capacity, namely the standing and walking limitations,

9  assessed by the ALJ and set forth in the hypothetical question.  Joint Stip. at 16.  Specifically,

10  plaintiff asserts that the ALJ found her limited to standing and walking for no more than two hours

11  in an eight-hour day with additional breaks, yet the jobs cited by the vocational expert "clearly

12  require the ability to be on one's feet up to six hours a day."  Joint Stip. at 16.  Plaintiff concludes

13  that the ALJ's reliance on the testimony of the vocational expert, without any persuasive

14  explanation for the discrepancy between the testimony and the DOT, is reversible error.  Id.

15  At step five of the sequential evaluation process, the burden shifts to the Commissioner to

16  prove that, based on the claimant's RFC, age, education, and past work experience, she can

17  perform some type of substantial gainful activity that exists in "significant numbers" in the national

18  economy.  See Smolen, 80 F.3d at 1291; see also 20 C.F.R. §§ 404.1520(a)(4)(v),

19  416.920(a)(4)(v); Bowen v. Yuckert, 482 U.S. 137, 146 n.6 (1987) ("It is true . . . that the Secretary

20  bears the burden of proof at step five, which determines whether the claimant is able to perform

21  work available in the national economy.").  "[T]he best source for how a job is generally performed

22  is usually the Dictionary of Occupational Titles.  In order for an ALJ to accept vocational expert

23  testimony that contradicts the Dictionary of Occupational Titles, the record must contain

24  'persuasive evidence to support the deviation.'"  Pinto v. Massanari, 249 F.3d 840, 845-46 (9th

25  Cir. 2001) (citing Johnson, 60 F.3d at 1435).  When the ALJ's decision contradicts the DOT, the

26  ALJ must offer an explanation regarding why he or she is rejecting the DOT's description.  See

27  Johnson, 60 F.3d at 1435 n.7 ("[i]n this case the ALJ's explanation is satisfactory because the ALJ

28  made findings of fact that support a deviation from the DOT.  The ALJ noted that the vocational

1   expert described the characteristics and requirements of jobs in the local area."); see also Terry

2   v. Sullivan, 903 F.2d 1273, 1278 (9th Cir. 1990).

3         In the decision, the ALJ determined that "[plaintiff's] ability to perform all or substantially all

4   of the requirements of [the light] level of work has been impeded by additional limitations." [AR at

5   27.]  The ALJ found, inter alia, that plaintiff "can be on her feet for 15 to 20 minutes at a time and

6   can carry on this way for 2 hours in an 8-hour period, using a cane as needed." [AR at 22.] During

7   the August 28, 2007, hearing, the ALJ posed the following hypothetical to the vocational expert:

8         So the individual can sit up to an hour at a time.  And has to stand and stretch for
          a minute or two.  But can't sit all day long . . . but could sit for six hours out of eight.
9         Standing and walking would be only a total of two hours out of eight.  Using a cane
          whenever she'd like to.  But on her feet all of 15, and 20 minutes at a time.  Lifting
10        and carrying would be no more than 20 pounds occasionally and 10 pounds
          frequently.  Only occasionally stoop and bend.  Can climb stairs but not ladders.
11        Can't work at heights.  Can't do any job requiring balancing and must work in an air
          conditioned work environment.  And would miss work once or twice . . . .
12

13  [AR at 69.]   The vocational expert testified that a hypothetical individual with the limitations

14  described by the ALJ would be unable to perform any of plaintiff's past relevant work, but would

15  be able to perform the jobs of bench assembler, small parts assembler, inspector, and hand

16  packager, with a fifty percent erosion of the occupational base for each of those jobs.  [AR at 69-

17  70.]  The vocational expert further testified that the jobs she cited were consistent with the DOT.

18  [AR at 70.]  Based on the vocational expert's testimony, the ALJ determined that plaintiff could

19  perform a significant number of jobs in the national economy.  [AR at 27.]

20  /

21  /

22  /

23  /

24  /

25  /

26  /

27  /

28  /

1    The vocational expert testified that the jobs of bench assembler, small parts assembler,

2  inspector, and hand packager are classified in the DOT as unskilled with a light exertional level.[13]

3  The DOT describes the strength rating for light work as follows:

4          Exerting up to 20 pounds of force occasionally (Occasionally: activity or
   condition exists up to 1/3 of the time) and/or up to 10 pounds of force frequently
5  (Frequently: activity or condition exists from 1/3 to 2/3 of the time) and/or a
   negligible amount of force constantly (Constantly: activity or condition exists 2/3 or
6  more of the time) to move objects.  Physical demand requirements are in excess of
   those for Sedentary Work.  Even though the weight lifted may be only a negligible
7  amount, a job should be rated Light Work: (1) when it requires walking or standing
   to a significant degree; or (2) when it requires sitting most of the time but entails
8  pushing and/or pulling of arm or leg controls; and/or (3) when the job requires
   working at a production rate pace entailing the constant pushing and/or pulling of
9  materials even though the weight of those materials is negligible.

10 See DOT, Appendix C - Components of the Definition Trailer, 1991 WL 688702 (1991).  The

11 regulations define light work as "lifting no more than 20 pounds at a time with frequent lifting or

12 carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b) and 416.967(b); see SSR

13 83-10.  "Even though the weight lifted in a particular light job may be very little, a job is in this

14 category when it requires a good deal of walking or standing -- the primary difference between

15 sedentary and most light jobs."  SSR 83-10; see also 20 C.F.R. §§ 404.1567(b) and 416.967(b).

16 Social Security Ruling 83-10 states that "[f]requent means occurring from one-third to two-thirds of

17 the time.  Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday,

18 the full range of light work requires standing and walking, off and on, for a total of approximately 6

19 hours of an 8-hour workday.  Sitting may occur intermittently during the remaining time."

20 _____

21    [13]  Although the vocational expert did not provide the DOT numbers for the jobs cited, the
   jobs of bench assembler (DOT No. 706.684-042), small products I assembler (DOT No. 706.684-
22 022), and certain inspector jobs, such as x-ray inspector (DOT No. 529.685-274), are classified
   in the DOT as light and unskilled with a specific vocational preparation ("SVP") of two.  Although
23 the vocational expert indicated that there would be work as a hand packager and described such
   work as light and unskilled with an SVP of two, the Court notes that the job of hand packager is
24 classified as unskilled with a medium exertional level.  See DOT No. 920.587-018.  Nevertheless,
   the ALJ's reliance on the vocational expert's testimony with respect to the job of hand packager
25 is harmless error given the Court's conclusion herein that the ALJ properly relied on the vocational
   expert's testimony as to the other jobs cited by her.  See Stout v. Comm'r, Soc. Sec. Admin., 454
26 F.3d 1050, 1054 (9th Cir. 2006) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)) (the
   theory of harmless error applies in social security cases); see also Robbins v. Soc. Sec. Admin.,
27 466 F.3d 880, 885 (9th Cir. 2006) (an error is harmless if it is "clear from the record that an ALJ's
28 error was 'inconsequential to the ultimate nondisability determination'").

1    Plaintiff's conclusion that there is no explanation for the disparity between the vocational

2    expert's testimony and the DOT, i.e., that the DOT's description of "light work" for the jobs cited by

3    the vocational expert would require plaintiff to go beyond the standing and walking limitations found

4    by the ALJ, fails.  To the extent a conflict exists between the vocational expert's testimony and the

5    DOT, there must be persuasive evidence supporting any decision to rely on the vocational expert's

6    opinion rather than on the information provided in the DOT.  See Light v. Social Sec. Admin., 119

7    F.3d 789, 793 (9th Cir. 1997) (where the vocational expert's testimony differs from the DOT, he

8    must provide a persuasive rationale supported by the evidence to justify the departure).  The ALJ

9    in this case found that plaintiff's limitations, including the standing and walking limitations, did not

10   allow her to perform the full range of light work.  [AR at 27, 70.]  See 20 C.F.R. §§ 404.1567(b),

11   416.967(b) ("[t]o be considered capable of performing a full or wide range of light work, [a claimant]

12   must have the ability to do substantially all of [the light work] activities."); see, e.g., Boster v.

13   Commissioner, Soc. Sec. Admin., 2008 WL 754275, *4 (D. Idaho Mar. 19, 2008) ("'there will be

14   instances where a claimant's residual functional capacity will not fit precisely within one of the

15   exertional categories of work'") (citation omitted).  To determine the extent to which plaintiff's

16   limitations eroded the unskilled, light occupational base, the ALJ asked the vocational expert

17   whether jobs exist in the national economy for an individual with plaintiff's age, education, work

18   experience, and residual functional capacity.  The vocational expert testified that an individual with

19   plaintiff's limitations could perform certain jobs that are classified in the DOT as unskilled and light

20   work based on the erosion of the available number of those jobs in the local and national

21   economies by fifty percent. [AR at 70.] Subsequent to the identification of the eroded occupational

22   base for the jobs cited, the vocational expert further testified, in response to the ALJ's inquiry as

23   to any potential conflicts  between her testimony and the DOT, that her testimony was consistent

24   with the DOT.  [AR at 70.]  See Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007)

25   (holding that an ALJ may not rely on a vocational expert's testimony regarding the requirements

26   of a particular job without first inquiring whether the testimony conflicts with the DOT).  While the

27   vocational expert did not explicitly state that the 50 percent erosion for the jobs identified was due

28

1    to plaintiff's standing and walking limitations, such a conclusion is reasonably implied.[14]  See Light,

2    119 F.3d at 793 ("[e]vidence sufficient to permit . . . a deviation [between the vocational expert's

3    testimony and the DOT] may be either specific findings of fact regarding the claimant's residual

4    functionality, or inferences drawn from the context of the expert's testimony") (citations omitted);

5    see also Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982) (an ALJ is entitled to draw

6    inferences logically flowing from the evidence).  Indeed, the vocational expert did not base her

7    testimony on a hypothetical individual that was capable of performing the full range of light work.

8    On the contrary, the expert considered the limitations on light work, included in the hypothetical

9    question posed by the ALJ, and reduced the number of jobs available to an individual with those

10   limitations.  [AR at 70.]  See SSR 83-12 (recognizing usefulness of vocational expert assistance

11   where claimant's exertional RFC does not coincide precisely with the definition of any one

12   exertional range); see also SSR 00-4p ("[t]he DOT lists maximum requirements of occupations as

13   generally performed, not the range of requirements of a particular job as it is performed in specific

14   settings.  A [vocational expert] . . . may be able to provide more specific information about jobs or

15   occupations than the DOT."); see, e.g., Vaughan v. Shalala, 58 F.3d 129, 132 (5th Cir.1995) ("the

16   value of a vocational expert is her familiarity with the specific requirements of a particular

17   occupation, including working conditions and the attributes and skills needed").  Further, plaintiff's

18   counsel cross-examined the vocational expert at the hearing regarding plaintiff's ability to perform

19   the jobs that she cited if plaintiff was off-task for about twenty percent of the workday, but did not

20   challenge the vocational expert's testimony with respect to the exertional requirements of any of

21   the jobs identified by her.  [AR at 70-71.]  Thus, the vocational expert's specific acknowledgment

22

---

23   [14]   There is no indication that the vocational expert's reduction of the available number of
jobs in the local and national economies was based on anything other than plaintiff's standing and
24   walking limitations.  The other limitations set forth in the hypothetical question are consistent with
the requirements of the jobs cited by the vocational expert.  For example, the bench assembler
25   job identified by the vocational expert does not require any climbing, balancing, or exposure to
high places, and requires only occasional stooping.  See DOT No. 706.684-042.  In addition, the
26   vocational expert testified that plaintiff could not return to her past work as a quality control
inspector because of the limitations on standing and walking.  [AR at 69-70.]  The vocational
27   expert's testimony indicates that the erosion of the occupational base for the jobs she cited was
28   based on plaintiff's standing and walking limitations.  [AR at 70.]

1   of the DOT's strength rating of light for the jobs that she cited, in conjunction with the erosion of

2   those jobs by fifty percent, provided a sufficient rationale to support the deviation between the

3   vocational expert's testimony and the DOT.   As such, the ALJ did not err by relying on the

4   vocational expert's testimony concerning plaintiff's ability to perform other work.   Remand is not

5   warranted on this issue.

6

7                                              **VI.**

8                                        **CONCLUSION**

9          **IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative,

10  remand, is **denied**; and  2. the decision of the Commissioner is **affirmed**.

11         **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the

12  Judgment herein on all parties or their counsel.

13         **This Memorandum Opinion and Order is not intended for publication, nor is it**

14  **intended to be included or submitted to any online service such as Westlaw or Lexis.**

15

16

17  DATED: April 28, 2009

18                                              _____
                                                        PAUL L. ABRAMS
                                                 UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28